■Johnson J.
delivered the opinion of the Court.
Before the act of 1800, 2 Faust, 355-7, there was no law prescribing the mode in which a master should emancipate a slave. He might therefore do it by deed, or will, or by parol, or in any other way. That act provides that it shall be by deed, duly recorded, and accompanied by the certificate of a magistrate and five free-holders that the slave, intended to be emancipated, is-not of bad character, and is capable of gaining a livelihood by honest means: And it it is declared, that if any slave shall be emancipated, or set free, otherwise than according to the act, it shall be lawful for any person to seize and convert to his own use, such slave, so illegally emancipated and set free. The act of 1820, (see acts of 1820, p. 22,) makes no alteration of the law, except to declare, that from thenceforth no slave shall be emancipated but by an act of the legislature.
It is true, that the taking possession by the defendant, was not intended as a- seizure or conversion to his own use, but on the *140 contrary, was evidently intended to protect him in the enjoyment what he supposed was his right of freedom; and supposing that the purchase from Brock by the plaintiff, was intended tQ operate, eo instanti, as an act of emancipation, it becomes a question, whether the plaintiff is intitled in law to maintain this action against the defendant.
„ „ 1 B1 Com. 89. Doug. 30.
To enable a plaintiff to maintain trover for a chattel, he must have either the right of property, or the right of immediate possession. Now I take it as very clear, that the plaintiff, by the act of emancipation, parted with both. The act of 1800 transferred them both to him who would seize upon the slave, and convert him to his own use ; and that right is inconsistent with the plaintiff’s right of property and possession. I am not prepared to say, that the plaintiff might not, under the act, himself have seized upon the slave, and thus have retained the right which he had abandoned, and superseded all others ; but here there was no such seizure. If, however, the act of emancipation was, as supposed by the witness Tucker, not consummated until 1822, when he attempted a settlement of accounts between Bill and the plaintiff, then the question arises whether the provisions of the act of 1800, authorizing the seizure and conversion, were not repealed by the act of 1820, and consequently whether the plaintiff had not the right at any time after to resume the possession.
The act of 1820, contains no repealing clause, special or general, and it is a well known rule of construction, that a previous act shall not be abrogated by a subsequent one, unless , . . . . r , J , ^ their provisions are inconsistent, but on the contrary, they are to be taken together, when they are upon the same subject, as necessary to the whole system. Now, the act of 1820, as before remarked, alters that of 1800, only so far as relates to the mode of emancipation, and is, so far, not only consistent with the right of seizure by another, but must, without it, be itself a perfect nullity. The act of 1820 in itself contains no penalty, or sanction, and if the right in another to seize, given by the act of 1800, is taken away by implication, the plaintiff may recover the property at any time, and subject him who retains it from him to an action ; and thus in despite of the law give effect to an illegal mode of emancipation.
*141 There is another view arising out of the circumstances of this particular case. From the year 1818, Bill, with the knowledge and consent of the plaintiff, exercised all the rights, and enjoyed all the privileges of a free man of colour; and whether we refer the act of emancipation to that period, or to 1822, the time fixed by the witness, Tucker, the manner o'f it was against the law, and the act itself utterly null and void. He was then a slave, without an owner, and cast upon society as a derelict, which, according to the law of nature, any one migbf appropriate to his own use. The defendant has, at most, done no more, and that with the humane view of giving effect, as far as he could, to a contract which the plaintiff had himself made, upon most ample consideration, and which he now seeks to avoid.
Motion refused.